In the Matter of MARTIN FRIEDMAN, an Attorney, Respondent.

First Department, November 17, 1939.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Meyer Kirschenbaum*, for the respondent.

Per Curiam. The respondent and one Arthur M. Newman in 1932 became associated in the business of collecting delinquent accounts. Their chief clients were the Alexander Hamilton Institute and the Grolier Society, both of which accounts were solicited by Newman and obtained upon the representation that he was in a position to collect their outstanding judgments of record. His compensation and that of respondent were on a contingent fee basis. The respondent and Newman then organized a corporation called the Credit Salvage Corporation, the purpose of which the respondent admitted was to purchase claims in order to commence actions thereon. The subscribing stockholders and the directors of said corporation were the respondent, the wife of Newman and one Robert H. Sturdevant, apparently a fictitious person. Its chief office was stated to be in Albany, N. Y.

Newman thereafter induced the Hamilton Institute and Grolier Society to assign to the Credit Salvage Corporation or to Sturdevant a large number of claims against residents of New York city and vicinity upon the representation that it would facilitate their collection to institute actions in Albany county because of the difficulty the defendants would have in defending themselves in that jurisdiction. As attorney he brought 164 actions in the Supreme Court, Albany county, in the names of the aforesaid assignees, which actions, because of the small amounts involved and the residence of the real parties, should have been instituted in the Municipal Courts of New York city. In some instances the judgments recovered included disbursements which exceeded the amount of the claims.

The respondent and Newman shared the same office in New York city. Collections were received by them indiscriminately. In many instances amounts received were not accounted for to the Hamilton Institute or Grolier Society. The respondent, although he knew that these organizations were the owners of the claims, accounted to Newman for such amounts as he received, thus permitting Newman to convert same to his own use. He also turned over to Newman the proceeds of certain other claims in which there were no assignments, which amounts Newman also converted. Newman finally disappeared. Thereafter, in response to demands for an accounting for amounts subsequently collected by him, the respondent took the position that he would not account until there has been an adjudication that the Hamilton Institute and Grolier Society, rather than the assignees, were entitled to the collections. He claimed to have had no knowledge that the assignments were without consideration and fictitious. The evidence refutes this contention. It further establishes that the respondent

did not set aside the moneys that he collected after the disappearance of Newman but that he converted same to his own use.

The respondent and Newman employed in their office a stenographer whom the respondent induced to become a notary public. At his direction she signed her name to verifications of complaints by Sturdevant notwithstanding she had never seen him, and in not a single instance did he appear before her.

The respondent's entire course of conduct indicates a gross disregard of his duties and responsibilities as an attorney and of the ethics of his profession. He should be disbarred.

Present — MARTIN, P. J., O'MALLEY, TOWNLEY, DORE and CALLAHAN, JJ.

Respondent disbarred.